

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*
*Northern Division*

---

*Rod J. Rosenstein*
*United States Attorney*

*Paul E. Budlow*
*Assistant United States Attorney*
*Paul.Budlow@usdoj.gov*

*36 South Charles Street*
*Fourth Floor*
*Baltimore, Maryland 21201*

*DIRECT: 410-209-4917*
*MAIN: 410-209-4800*
*FAX: 410-962-3091*
*TTY/TDD: 410-962-4462*

March 12, 2012

Joseph Balter, Esquire
Office of the Federal Public Defender
100 South Charles Street
Tower II, Suite 1100
Baltimore, Maryland 21201

Re:  United States v. Justin M. Bowman
     Criminal #: JKB-11-0677

Dear Mr. Balter:

This letter confirms the plea agreement which has been offered to the Defendant by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have him execute it in the spaces provided below. If this offer has not been accepted by Tuesday, March 13, 2012, at 5:00 pm, it will be deemed withdrawn. The terms of the agreement are as follows:

### Offense of Conviction

1.      The Defendant agrees to waive indictment and plead guilty pursuant to an Information charging him with Production of Child Pornography, in violation of 18 U.S.C. §2251(a). The Defendant admits that he is, in fact, guilty of that offense and will so advise the Court.

### Elements of the Offense

2.      The elements of the offense to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

1

a.      The Defendant knowingly employed, used, persuaded, induced, enticed or coerced a minor to engage in sexually explicit conduct;

b.      For the purpose of producing a visual depiction of such conduct; and;

c.      The Defendant had reason to know that the visual depiction would be transported in interstate commerce, said visual depiction was transported in interstate or foreign commerce, or the materials used to produce the visual depiction were transported in interstate commerce.

## Penalties

3.      (a)      The maximum sentence provided by statute for the offense to which your client is pleading guilty is as follows:  not less than fifteen (15) years and not more than thirty (30) years imprisonment, $250,000 fine, and supervised release for life.  In addition, the Defendant must pay $100 as a special assessment pursuant to 18 U.S.C. § 3013, which will be due and should be paid at or before the time of sentencing.  This Court may also order him to make restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.[1]  If a fine or restitution is imposed, it shall be payable immediately, unless, pursuant to 18 U.S.C. § 3572(d), the Court orders otherwise.  The Defendant understands that if he serves a term of imprisonment, is released on supervised release, and then violates the conditions of his supervised release, his supervised release could be revoked - even on the last day of the term - and the Defendant could be returned to custody to serve another period of incarceration and a new term of supervised release.  The Defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the Defendant will serve any term of imprisonment imposed.

(b)      The defendant understands and agrees that as a consequence of his conviction for the crime to which he is pleading guilty, he will be required to register as a sex offender in the place where he resides, where he is an employee, and where he is a student, pursuant to the Sex Offender Registration and Notification Act (SORNA), and the laws of the state of his residence.  Failure to do so may subject him to new charges pursuant to 18 U.S.C. § 2250.

## Waiver of Rights

4.      The Defendant understands that by entering into this agreement, he surrenders certain rights as outlined below:

---

[1]      Pursuant to 18 U.S.C. § 3612, if the Court imposes a fine in excess of $2,500 that remains unpaid 15 days after it is imposed, the Defendant shall be charged interest on that fine, unless the Court modifies the interest payment in accordance with 18 U.S.C. § 3612(f)(3).

a.        The Defendant has the right to have his case presented to a Grand Jury, which would decide whether there is probable cause to return an indictment against him. By agreeing to proceed by way of Information, he is giving up that right, and understands that the charges will be filed by the United States Attorney without the Grand Jury.

b.        If the Defendant had persisted in his plea of not guilty, he would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

c.        If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

d.        If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in his defense, however, he would have the subpoena power of the Court to compel the witnesses to attend.

e.        The Defendant would have the right to testify in his own defense if he so chose, and he would have the right to refuse to testify. If he chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from his decision not to testify.

f.        If the Defendant were found guilty after a trial, he would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against him. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

g.        By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that he may have to answer the Court's questions both about the rights he is giving up and about the facts of his case. Any statements the Defendant makes during such a hearing would not be admissible against him during a trial except in a criminal proceeding for perjury or false statement.

h.        If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find him guilty.

3

i.      By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status. The Defendant recognizes that if he is not a citizen of the United States, pleading guilty may have consequences with respect to his immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including his attorney or the Court, can predict with certainty the effect of a conviction on immigration status. Defendant nevertheless affirms that he wants to plead guilty regardless of any potential immigration consequences.

## Advisory Sentencing Guidelines Apply

5.      The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

## Factual and Advisory Guidelines Stipulation

6.      A stipulation of facts is attached as Attachment A to this plea agreement that specifically establishes the commission of additional offenses than those contained in the Information. Pursuant to § 1B1.2(c), those additional offenses shall be treated as if the defendant had been convicted of additional counts charging those offenses.

7.      This Office and the Defendant understand, agree and stipulate to the following applicable sentencing guidelines factors:

Guidelines for the Count of Conviction (Victim 3):

a.      Pursuant to U.S.S.G. § 2G2.1(a), the base offense level is **32**.

b.      Pursuant to U.S.S.G. § 2G2.1(b)(1), there is a four **(4)** level increase because the victim in this case was under the age of 12 at the time of the offense.

c.      Pursuant to U.S.S.G. § 2G2.1(b)(5), there is a two **(2)** level increase because the minor was in the custody, care, or supervisory control of the defendant.

d.      Thus, the adjusted offense level for Counts One is **38**.

4

Guidelines for the Relevant Conduct (Production of Child Pornography - Victim 1):

        e.      Pursuant to U.S.S.G. § 2G2.1(a), the base offense level is **32**.

        f.      Pursuant to U.S.S.G. § 2G2.1(b)(1), there is a four **(4)** level increase because the victim in this case was under the age of 12 at the time of the offense.

        g.      Pursuant to U.S.S.G. § 2G2.1(b)(5), there is a two **(2)** level increase because the minor was in the custody, care, or supervisory control of the defendant.

        h.      Thus, the adjusted offense level for Victim 2 is **38**.

Guidelines for the Relevant Conduct (Production of Child Pornography - Victim 2):

        i.      Pursuant to U.S.S.G. § 2G2.1(a), the base offense level is **32**.

        j.      Pursuant to U.S.S.G. § 2G2.1(b)(1), there is a four **(4)** level increase because the victim in this case was under the age of 12 at the time of the offense.

        k.      Pursuant to U.S.S.G. § 2G2.1(b)(5), there is a two **(2)** level increase because the minor was in the custody, care, or supervisory control of the defendant.

        l.      Thus, the adjusted offense level for Victim 2 is **38**.

Grouping:

        m.      Pursuant to U.S.S.G. §§ 1B1.2 and 3D1.4, the above-referenced groups do not  group and the highest offense level (38) is increased by three (3) levels for a total of **41**.

        8.      This Office does not oppose a two-level reduction in the Defendant's adjusted offense level, based upon your client's apparent prompt recognition and affirmative acceptance of personal responsibility for his criminal conduct.  This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional 1-level decrease in recognition of your client's acceptance of personal responsibility for his conduct.  This Office may oppose *any* adjustment for acceptance of responsibility if your client (a) fails to admit each and every item in the factual stipulation; (b) denies involvement in the offense; (c) gives conflicting statements about his involvement in the offense; (d) is untruthful with the Court, this Office or the United States Probation Officer; (e) obstructs or attempts to obstruct justice prior to sentencing; (f) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (g) attempts to withdraw his plea of guilty.

      Thus, the final anticipated base offense level is **38.**

        9.      Except as set forth above, this Office and the Defendant agree that, with

respect to the calculation of the advisory guidelines range, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in Chapters 2, 3, 4 or 5 of the United States Sentencing Guidelines will be raised or are in dispute.

10.     The Defendant understands that there is no agreement as to his criminal history or criminal history category, and that his criminal history could alter his offense level if he is a career offender or if the instant offense was a part of a pattern of criminal conduct from which he derived a substantial portion of his income.

## The "C" Plea

11.     The parties stipulate and agree pursuant to Fed. R. Crim. P. 11(c)(1)(C) that the following sentence is the appropriate disposition of this case: fifteen years (180 months) of incarceration. In the event that the Court rejects this plea agreement, either party may elect to declare the agreement null and void. Should the Defendant so elect, he will be afforded the opportunity to withdraw his plea agreement pursuant to the provisions of Federal Rule of Criminal Procedure 11(d)(2)(A).

## Obligations of the United States Attorney's Office

12.     At the time of sentencing, this Office will move to dismiss any open counts against the Defendant.

13.     The parties reserve the right to bring to the Court's attention at the time of sentencing, and the Court will be entitled to consider, all relevant information concerning the Defendant's background, character and conduct.

## Waiver of Appeal

14.     In exchange for the concessions made by this Office and the Defendant in this plea agreement, this Office and the Defendant waive their rights to appeal as follows:

a.     The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or otherwise, to appeal his conviction. Both the Defendant and this Office knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742 to appeal a sentence of 180 months imprisonment and any term of supervised release, as well as an order of forfeiture, agreed to in this case as well as whatever fine or order of restitution that may be imposed and any issues that relate to the establishment of the advisory guidelines range. The Defendant further waives any and all motions, defenses, probable cause determinations, objections which defendant could assert to the indictment or to the Court's entry of judgment against the Defendant, and any imposition of sentence upon the Defendant consistent with this agreement. If Defendant files a notice of appeal, notwithstanding this agreement, Defendant agrees that this case shall be remanded to the district court to determine whether Defendant is in breach of this agreement and,

6

if so, to permit the United States to withdraw from the plea agreement.

        b.      The Defendant may withdraw from the agreement if the Court wishes to impose a sentence in excess of 180 months and the government may withdraw if the Court wishes to impose a sentence below 180 months. In the event that the Court rejects the plea, but neither side wishes to withdraw from the agreement, then nothing in this agreement shall be construed to prevent either the Defendant or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a), and appealing from any decision thereunder, should a sentence be imposed that is illegal or that exceeds the statutory maximum allowed under the law or that is less than any applicable statutory mandatory minimum provision.

        c.      If the Defendant's guilty plea is rejected, withdrawn, vacated, or reversed by any court in a later proceeding, the government will be free to prosecute the Defendant for all charges as to which it has knowledge, and any charges that have been dismissed because of this plea agreement will be automatically reinstated. In such event, the Defendant waives any objections, motions, or defenses based upon the Speedy Trial Act or the Sixth Amendment to the Constitution as to the delay occasioned by the later proceedings.

        d.      The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

Obstruction or Other Violations of Law

        15.      The Defendant agrees that he will not commit any offense in violation of federal, state or local law between the date of this agreement and his sentencing in this case. In the event that the Defendant (i) engages in conduct after the date of this agreement which would justify a finding of obstruction of justice under U.S.S.G. § 3C1.1, or (ii) fails to accept personal responsibility for his conduct by failing to acknowledge his guilt to the probation officer who prepares the Presentence Report, or (iii) commits any offense in violation of federal, state or local law, then this Office will be relieved of its obligations to the Defendant as reflected in this agreement. Specifically, this Office will be free to argue sentencing guidelines factors other than those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement. As with any alleged breach of this agreement, this Office will bear the burden of convincing the Court of the Defendant's obstructive or unlawful behavior and/or failure to acknowledge personal responsibility by a preponderance of the evidence. The Defendant acknowledges that he may not withdraw his guilty plea because this Office is relieved of its obligations under the agreement pursuant to this paragraph.

Forfeiture

        16.      The defendant agrees to forfeit all right, title and interest in the property seized by law enforcement authorities from his residence at 8131 Harold Court, 3C, Glen Burnie,

7

Maryland 21060 on July 14, 2011 and November 22, 2011, as well as during his arrest on December 1, 2011. He further agrees to take whatever steps are necessary to pass clear title to those properties to the United States. Those items include, but are not limited to:

    a.    Dell Dimension B110 Desktop computer tower, service tag GZ5DZ81, containing one Western Digital 80GB IDE hard drive, s/n: WCAM9E024415; and

    b.    Dell Inspiron Mini10 Netbook Computer, service tag DWRMLK1, containing one Seagate 160GB SATA hard drive, s/n: 5VC1QTST; and

    c.    PNY Attache 512MB Thumb drive, THNU3512AWS1E7 0542BWK6990310;

    d.    Sanyo Digital Camera, Model VPC-S1275, S/N: 09071037391;

    e.    MicroSD 2GB SD Card, S/N: MMAGR02GUECA-MB;

    f.    Sandisk Micro SD HC 4 GB Card, S/N: BH1014116046G;

    g.    Samsung SCH-U960 mobile phone; and

    h.    Verizon HTC Cellular phone S/N: HT16MM601163.

## Court Not a Party

17.    The Defendant expressly understands that the Court is not a party to this agreement. The Defendant understands that the Court is under no obligation to accept this plea offer made pursuant to Rule 11(c)(1)(C). The Defendant understands that neither the prosecutor, his counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

## Entire Agreement

18.    This letter supersedes any prior understandings, promises, or conditions between this Office and the Defendant and, together with the Sealed Supplement, constitutes the complete plea agreement in this case. The Defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement and none will be entered into unless in writing and signed by all parties.

If the Defendant fully accepts each and every term and condition of this agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Rod J. Rosenstein
United States Attorney

By: _____
Paul Budlow
Assistant United States Attorney


I have read this agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

X 3/14/12
Date

_____
Justin M. Bowman


I am Mr. Bowman's attorney. I have carefully reviewed every part of this agreement, including the Sealed Supplement, with him. He advises me that he understands and accepts its terms. To my knowledge, his decision to enter into this agreement is an informed and voluntary one.

3-14-12
Date

_____
Joseph A. Balter, Esquire


9

Attachment A
Statement of Facts

*The undersigned parties hereby stipulate and agree that the following facts are true and accurate, and that if this matter had gone to trial, the government would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter gone to trial.*

Justin M. Bowman ("Bowman") age 26, resides in Glen Burnie, Maryland. As detailed below, between September 2010 and July 2011, Bowman produced images of three minors engaged in sexually explicit conduct.

Relevant Conduct, Victim 1:

Victim 1 is a minor male born in 1998. His brother is a minor male born in 1996. Victim 1 was 11 years old and his brother was 14 years old on Saturday, September 18, 2010 when they encountered Bowman at a mall in Anne Arundel County. Bowman agreed to take Victim 1 and his brother back to the apartment that he shared with his wife and their then 1 ½ year old daughter. Victim 1 and his brother stayed at Bowman's apartment from Saturday night until the following Monday night. At the apartment, the boys played video games, watched television, and generally "hung out" with Bowman.

During the weekend, Bowman and others took numerous photographs with Bowman's digital camera, including over 50 of Victim 1. In many of the photos, Victim 1 is shirtless, and Bowman and Victim 1 appear to be engaging in horseplay. At least two of the images depicted Victim 1 standing with a white shirt pulled up and no pants or underwear on, exposing his penis. In one of these photos, a hand is holding up Victim 1's shirt from behind, and the focus point of the image is on Victim 1's erect penis. Bowman admits that he was responsible for the production of these images. These images were located on Bowman's desktop computer, in the "Justin" partition, and in a folder named, "Me, [Victim 1], [Victim 1's brother], and Ben."

Relevant Conduct - Victim 2:

Victim 2 was ▮▮▮▮▮ old in March 2011. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Bowman was occasionally left alone with Victim 2 while his girlfriend went to the store or ran an errand. When alone with Victim 2 on at least two occasions, Bowman used his digital camera and his mobile phone to take photographs of Victim 2 that focused on Victim 2's genitals.

On March 7, 2011, Bowman used his Samsung phone and digital camera to take a series of 4 photos of Victim 2. In the photos, Victim 2's diaper is open, exposing his penis. In at least one of the photographs, the focus of the photograph is Victim 2's exposed penis.

On March 16, 2011 at approximately 10:20 am, Bowman used his Sanyo digital camera

to take at least two nude photographs of Victim 2. The first photograph is a full frontal photograph of Victim 2, fully nude. The second photograph is close up of Victim 2's mid-section, focusing on his penis. Both of these images were found on a 4GB SD owned by Bowman, during the search of Bowman's residence in November 2011.

Count 1 - Victim 3 ███████████████████████:

Victim 3 was ██████████████ old in July 2011. Bowman used his digital camera to take photographs of Victim 3 that focused on Victim 3's genitals. Bowman took 12 photos of Victim 3 between 2:10 pm and 2:18 pm on July 12, 2011. The photos were found on the seized thumb drive in a folder titled in Victim 3's first name. The first 8 photographs are Victim 3 standing on a coffee table in Bowman's living room, apparently dancing. The next 4 photographs are close-up images that are focused on Victim 3's vagina. Victim 3 is sitting on Bowman's lap in these photographs. In the last three of these, Victim 3's legs are spread apart.

Additional Facts

In February 2011, Bowman began working at the Exxon convenience store located at 402 S. Camp Meade Road, Linthicum, Maryland 21090. On June 21 and 22, 2011, Bowman used the store computer at the Exxon to view and download child pornography and anime child pornography to the computer's hard drive and to a thumb drive. After a store employee discovered Bowman's activities on the computer, the Anne Arundel County Police began an investigation. The computer from the Exxon was seized, as was the following from Bowman's residence on July 14, 2011:

   a. Dell Dimension B110 Desktop computer tower, service tag GZ5DZ81, containing one Western Digital 80GB IDE hard drive, s/n: WCAM9E024415; and

   b. Dell Inspiron Mini10 Netbook Computer, service tag DWRMLK1, containing one Seagate 160GB SATA hard drive, s/n: 5VC1QTST; and

   c. PNY Attache 512MB Thumb drive, THNU3512AWS1E7 0542BWK6990310.

The Exxon computer and the three items mentioned immediately above contained images of minors engaged in sexually explicit conduct. In addition to the images of child pornography that Bowman produced as described above, there were more than 100 images of child pornography located on the seized items of these images were possessed by Bowman.

Bowman's Sanyo digital camera and Samsung camera phone, which were used to produce the images of Victims 1, 2, and 3 described above, were manufactured outside of the United States. The images were therefore produced using materials that have been mailed, shipped, and transported in and affecting interstate and foreign commerce by any means, including by computer.

I have reviewed the foregoing statement of facts with my attorney, understand it, agree with it, and do not wish to change any part of it.  I further understand that it is included as part of my plea agreement with the government in this case.


_____
Justin M. Bowman

I am Mr. Bowman's attorney.  I have carefully reviewed the statement of facts with him.


_____
Joseph A. Balter, Esquire
Counsel for Justin M. Bowman

3